# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

RICHARD HENDERSON                                    CIVIL ACTION
DOC # 109504

VERSUS                                               15-804-SDD-EWD

ROBERT TANNER, WARDEN, ET AL.

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by

Defendants, Warden Robert Tanner ("Tanner"), Dr. Raman Singh, Dr. Preety Singh, and

Elizabeth Britton, N.P. ("Britton") (or collectively "Defendants").    Plaintiff, Richard

Henderson ("Plaintiff") has filed an *Opposition*[2] to Defendants' motion.  For the following

reasons, the Court finds that Defendants' motion should be granted.

## I.    FACTUAL BACKGROUND

During the relevant time period, Plaintiff was incarcerated at Elayn Hunt

Correctional Center ("EHCC") in St. Gabriel, Louisiana.[3]   Plaintiff is a fifty-eight year old

male who was originally diagnosed with Hepatitis C ("HCV") and Stage 3 Fibrosis

following a liver biopsy performed on August 20, 2009 at University Medical Center in

Lafayette, Louisiana.[4]   Defendants claim this diagnosis was given three to four years

before Plaintiff was convicted and incarcerated in early 2013 for felony drug charges.[5]

---

[1] Rec. Doc. No. 130.
[2] Rec. Doc. No. 135.
[3] Rec. Doc. No. 1.
[4] Rec. Doc. No. 130-4 at 127.
[5] Rec. Doc. No. 130-1 at 2.
50192

On March 25, 2013, Plaintiff was transferred from Pine Prairie Detention Center to EHCC pursuant to a medical transfer request based on Plaintiff's chronic HCV.[6]  On April 25, 2013, Plaintiff was evaluated at the EHCC Liver Clinic by Defendant Britton, who found that Plaintiff suffered from possible cirrhosis of the liver, HCV, alcoholism, anxiety, poly-substance abuse, controlled hypertension, and GERD.[7]  Plaintiff was advised to begin a low sodium diet pending final lab results.[8]  On July 25, 2013, lab results confirmed that Plaintiff suffered from HCV, and Plaintiff was instructed to stop smoking.[9]  Defendants claim that, despite these instructions, Plaintiff never complied with a low sodium diet, and he likewise continued to smoke five to ten cigarettes per day.[10]

The record reflects that Plaintiff was approved to begin treatment using PEG-Introl and Ribavirin on April 25, 2014.[11]  Defendants contend this protocol was a commonly accepted treatment for HCV at the time.  Plaintiff's medical records indicate that he continued with this drug combination treatment for twenty-four weeks, but this treatment was determined at that time to have been ineffective.[12]  Defendants claim that, out of concern that Plaintiff would develop a resistance to future HVC drugs, this drug combination treatment was discontinued on October 30, 2014.[13]  Britton's notes from Plaintiff's May 28, 2015 Hepatology Clinic visit state that the "Peg-INF & Rib Combo" was discontinued "to prevent him developing resistant strain of Hep C."[14] Defendants contend,

---

[6] Rec. Doc. No. 130-4 at 30.
[7] *Id.* at 232.
[8] *Id.*
[9] *Id.* at 224.
[10] *Id.* at 214, 204-209; Rec. Doc. No. 130-7 at 85, 113.
[11] Rec. Doc. No. 130-4 at 200.
[12] *Id.* at 170.
[13] *Id.*
[14] *Id.*

50192

and the record confirms, that Plaintiff continued to receive regular health care at EHCC, and his many medical ailments, including HVC, were medically monitored by Defendants.[15]

On May 18, 2017, Plaintiff was identified as a potential candidate for the Direct Acting Antiviral ("DAA") drug Zepatier, a new and recently developed drug with potential to cure HVC.[16]  Between May 18, 2017 and September 18, 2017, Plaintiff underwent several tests to determine Plaintiff's ability to safely take Zepatier.[17]  Plaintiff began taking Zepatier on September 18, 2017, and he continued taking it until December 11, 2017, when tests indicated that the virus was undetectable.[18]  However, three months later, Plaintiff was again tested, and the results showed that he was not cured of HCV.[19]

After further evaluation, Plaintiff was determined to be a candidate for another DAA, Mavyret, designated as a "rescue drug," and he began taking this drug on April 9, 2018.[20]  Plaintiff took Mavyret for sixteen weeks, but lab results indicated on July 29, 2018 that he was not cured of HCV.[21]  As of the date of Defendants' current motion, Plaintiff had been taking a new rescue drug, Vosevi, but had not yet been tested to determine the drug's effectiveness.[22]

Plaintiff maintains that he was denied effective treatment for HCV for three years

---

[15] Defendants' Exhibit A, *en globo*, at pp. 444, 446-462, 464-470, 506-508, 512, 521-523, 539, 551, 560-61, 782-786, 792, 807-808, 819, 834-835, 857, 861, 898-899, 911, 917-920, 932, 945, 946-952, 967, 975-976, 981-996, 1001, 1011-1014. Rec. Doc. Nos. 130-4 through 130-12.
[16] Rec. Doc. No. 130-7 at 33, 81-82, 105-106, 109, 117.
[17] Rec. Doc. No. 130-6 at 253-274.
[18] Rec. Doc. No. 130-7 at 28; Rec. Doc. No. 130-9 at 14-15.
[19] Rec. Doc. No. 130-10 at 5.
[20] *Id.* at 17.
[21] *Id.* at 17; Rec. Doc. No. 130-11 at 1, 12.
[22] Rec. Doc. No. 130-12 at 25-26.
50192

– treatment he claims was "virtually certain" to cure him of HCV.[23]  Plaintiff claims this three-year denial of medical treatment violated his constitutional rights under the Eighth Amendment to have his serious medical needs met.

It is undisputed that Defendants were aware of Plaintiff's HCV diagnosis in April 2013.  Plaintiff claims that he was given PEG-Intron and Ribavirin, which he describes as "old medication,"[24] while Defendants knew of the effectiveness of new DAA drugs, one being Harvoni, that could cure HCV.[25]  Plaintiff claims that, although Defendants knew these DAAs existed in 2014, he went "untreated" by being denied the new DAAs until September 2017.[26]  Plaintiff contends this "non-treatment" caused his Stage 3 Fibrosis to progress to Stage 4 Cirrhosis.[27]  Plaintiff further contends that Defendant Britton advised him that he would not be prescribed Harvoni because it was too expensive.[28]

Plaintiff filed this lawsuit against Defendants pursuant to 42 U.S.C. § 1983, alleging that the Defendants were deliberately indifferent to his medical needs in violation of his Eighth Amendment constitutional rights.   Plaintiff also asserts claims of supervisory liability against Defendants Tanner, Dr. Raman Singh, and Dr. Preety Singh.  Defendants

---

[23] Rec. Doc. No. 135 at 1.  Plaintiff cites for this proposition "Exh. A; Doc. 132-2, p. 3, ¶¶ 12-14; Ex. F, p. 3, l. 2-6."  However, Plaintiff's exhibits attached to this memorandum are not labeled by letter; the Court cannot locate a purported "Exh. A," (To the extent Plaintiff is citing Defendants' Exh. A, he has still failed to direct the Court to the specific page numbers in support of this statement.); Rec. Doc. No. 132 is a utility entry by the Court, and there are no attachment documents to Rec. Doc. No. 132.  Further, Plaintiff directs the Court to Exhibit F at page 3, lines 2-6; however, Exhibit F, as identified at Rec. Doc. No. 133-9, is the Affidavit of Joshua Stafford, which contains only one page.  There is no labeled Exhibit F attached to Plaintiff's *Opposition.*  The problem repeats throughout Plaintiff's memo, and the Court will not scour the record to find the evidence, if submitted, that matches Plaintiff's mislabeled citations.
[24] Rec. Doc. No. 135 at 2.
[25] Rec. Doc. No. 130-4 at 170, 200.  Plaintiff also cites to "Ex. E, ¶¶ 10-12," but none of the exhibits attached to Plaintiff's memo are labeled Exhibit E, nor do any contain numbered paragraphs up to 10.  The document identified as Exhibit E attached at Rec. Doc. No. 133-8 is an affidavit containing four paragraphs.
[26] Rec. Doc. No. 135 at 2.  Again, Plaintiff's citations to evidence supporting this statement could not be located and/or are not attached to Plaintiff's memo.
[27] Rec. Doc. No. 130-4 at 127; Rec. Doc. No. 130-7 at 103.
[28] Rec. Doc. No. 36 at 7.

50192

have moved for summary judgment on all claims, arguing that Plaintiff's claims are unsupported by the record evidence and, alternatively, the Defendants are entitled to qualified immunity.

## II.    LAW AND ANLYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[30]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[31]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[32]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[33]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a

---

[29] Fed. R. Civ. P. 56(a).

[30] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[31] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).

[32] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[33] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

50192

reasonable jury could return a verdict for the nonmoving party.'"[34]  All reasonable factual inferences are drawn in favor of the nonmoving party.[35]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[36]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[37]

### B.  Deliberate Indifference to Medical Needs

To establish liability in connection with a claim for deliberate medical indifference, a prisoner-plaintiff must be able to show that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."[38] "Deliberate indifference is an extremely high standard to meet."[39]  In order to prevail, the plaintiff must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[40]  Further, the plaintiff must establish that the defendant possessed a culpable state of mind.[41]  For a prison official to be held liable, "the official must both be aware of facts from which the inference could be

---

[34] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[35] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[36] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[37] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

[38] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985).

[39] *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

[40] *Id.* (quoting *Johnson*, 759 F.2d at 1238).

[41] *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)(citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

50192

drawn that a substantial risk of serious harm exists, and he must also draw the inference."[42]  "Mere negligence, neglect, or medical malpractice" does not constitute deliberate indifference.[43]  Even "gross negligence" does not establish deliberate indifference.[44] Rather, "subjective recklessness as used in the criminal law" is the appropriate standard for "deliberate indifference" under the Eighth Amendment.[45]  The mere delay of medical care can also constitute an Eighth Amendment violation but only "if there has been deliberate indifference [that] results in substantial harm."[46]

Defendants contend Plaintiff has failed to demonstrate deliberate medical indifference that rises to a constitutional violation because he has failed to demonstrate that the Defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any conduct that reveals a wanton disregard for his serious medical needs.[47]  Defendants argue that Plaintiff alleges only that he was unsatisfied with his medical care, *i.e.*, not prescribed his drug of choice, not that he was not provided medical care.  Plaintiff primarily complains that he did not receive the drug Harvoni to treat his HCV when it first became available on the market; thus, Defendants were deliberately indifferent to his medical needs in not procuring and prescribing this drug.  Accordingly, Defendants maintain that Plaintiff's case is not based on a constitutional deprivation but a disagreement with medical staff regarding the treatment Plaintiff received.

---

[42] *Id.* at 837.
[43] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).
[44] *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004).
[45] *Farmer*, 511 U.S. at 839-40.
[46] *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).
[47] Rec. Doc. No. 130-1 at 7 (citations and quotation marks omitted).
50192

Plaintiff maintains that, from October 30, 2014 until September 18, 2017, when he was prescribed Zepatier, he was given no treatment for HCV.[48] As a result of this three-year indifference, Plaintiff claims his Stage 3 Fibrosis progressed to Stage 4 Cirrhosis. Plaintiff does not address the record evidence establishing that he failed to comply with medical orders to change his diet and stop smoking, conduct that may have contributed to his worsening condition.

Dr. Raman Singh testified in a deposition that, around 2013 or 2014, the FDA approval process for "new drugs" for HCV treatment was completed, and Harvoni was one of the first drugs out.[49] Dr. Singh testified that Harvoni has around a 95% success rate with very little side effects.[50] Dr. Singh explained how the medical community assessed the performance of the drugs before reaching conclusions, as was done before in assessing HIV drug protocols,[51] and testified that, "as of today, [these drugs] are the standard of care."[52]

Dr. Singh was asked whether the high costs of drugs like Harvoni was a major concern for the DOC, and he responded that "[i]t was one of many concerns," with other concerns relating to lacking information based on the newness of the drugs and patient selection criteria.[53] Dr. Singh explained how the introduction of these new drugs would require training for professionals, particularly at Elayn Hunt where only one nurse practitioner and a part-time clinician were treating inmates with hepatitis C.[54] Further, the

---

[48] Rec. Doc. No. 135 at 4.
[49] Rec. Doc. No. 130-14 at 15 (Deposition of Dr. Raman Singh, p. 14).
[50] Id.
[51] Id. at 17-19 (Deposition of Dr. Raman Singh, pp. 16-19).
[52] Id. at 19-20 (Deposition of Dr. Raman Singh, p. 18, line 25, p. 19, line 1).
[53] Id. at 24 (Deposition of Dr. Raman Singh, p. 23, line 6).
[54] Id.

50192

medical staff would have to work with the pharmacy regarding acquiring the drugs, and staff would have to formulate an "efficient patient education model."[55] Dr. Singh also explained that, leading up to the implementation of this new drug protocol in October 2016, medical staff collected data and created a database to determine which of the 5,000 HCV inmates in the DOC, with the most serious liver damage and highest levels of fibrosis, would receive the new treatment first.[56]

Considering the undisputed facts of this case, the totality of Plaintiff's medical records, the summary judgment evidence presented by the Parties, and the applicable law and jurisprudence, the Court finds that Plaintiff has failed to demonstrate that he suffered a constitutional deprivation. Applying the law to the facts of this case, Plaintiff has failed to demonstrate that genuine issues of fact exist regarding his claim of deliberate indifference to his serious medical needs.

That Plaintiff was not prescribed Harvoni, his preferred treatment, as soon as it was on the market, does not rise to a constitutional violation. As the court stated in *Leonard v. Daniel*, "[t]he Eighth Amendment does not guarantee an inmate his choice of treatment or the right to dictate the type or dosage of medication prescribed to him.[57] In fact, the Fifth Circuit has held that 'deliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment.'"[58]

Moreover, the record in this case is replete with evidence that Plaintiff's HCV was regularly monitored, and he received treatment, albeit treatment with which he disagreed,

---

[55] *Id.* at 25 (Deposition of Dr. Raman Singh, p. 24, line 6).
[56] *Id.* at 29-30 (Deposition of Dr. Raman Singh, pp. 28-29).
[57] 2016 WL 1274448 at *7 (E.D. Tex. Feb. 24, 2016)(citing *Sama v. Hannigan*, 669 F.3d 585, 590–91 (5th Cir. 2012); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).
[58] *Id.* (quoting *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009)).
50192

for all of his medical conditions, including HCV. Plaintiff's medical records consist of over 1200 pages for the time period between 2013 to the present, which further undermines Plaintiff's claim that he received "no treatment" for HCV for three years. Specifically, the record demonstrates that, during this three year period, lab work was routinely performed specific to monitoring his HCV, and Plaintiff received routine ultrasounds of his abdomen and consults in the Hepatology Clinic to monitor his cirrhosis.[59] Plaintiff's January 12, 2016 Radiology referral indicated that he had cirrhosis due to HCV that was non-responsive to treatment.[60] The December 4, 2015[61] and July 14, 2016[62] clinic notes of Britton indicate that Plaintiff was cirrhotic but stable. The December 2015 notes also indicate that Plaintiff was non-responsive to HCV treatment.[63] Nurse Britton testified that, "within cirrhosis, we have what's called compensated, or stable, and we have decompensated, which is a sign of end-stage liver disease. So most cirrhotics are compensated."[64] There is no summary judgment evidence before the Court that Plaintiff's cirrhosis was ever considered anything but stable.

As Defendants point out, similar claims to those raised herein were rejected by the court in *Warren v. Gusman*, wherein a pretrial detainee complained that he received no treatment for hepatitis C while detained by the defendants.[65] Contrary to the plaintiff's complaints, his medical record demonstrated that prison doctors diagnosed the plaintiff

---

[59] Rec. Doc. No. 130-6 at 81, 174, 153, 78, 126, 122, 120, 135 -137; Rec. Doc. No. 130-7 at 47, 44,43, & 80.
[60] Rec. Doc. No. 130-6 at 122.
[61] *Id.* at 137.
[62] *Id.* at 136.
[63] *Id.* at 137.
[64] Rec. Doc. No. 130-15 at 26 (Deposition of Elizabeth Britton at 25, lines 14-18).
[65] No. 16-15046, 2017 WL 1373875 (E.D. La. Mar. 10, 2017).
50192

with hepatitis C and ordered tests to monitor his health.[66]  The *Warren* court relied on the

Fifth Circuit's holding in *Harris v. Epps*, wherein the court affirmed summary judgment in

favor of prison defendants on the plaintiff's claim of deliberate indifference to his serious

medical needs based on alleged denial of treatment for his hepatitis C infection and back

problems.[67]  The Fifth Circuit held:  "The record shows that Harris did receive treatment

for those ailments and that his claim amounts to a disagreement with the treatment and

a desire for more. That is not enough for a viable claim of deliberate indifference."[68]

Also, in *Calloway v. Gusman*, an inmate complained about insufficient and delayed

medical care for his hepatitis C.[69]  The court rejected the plaintiff's claims as set forth

below:

> Although plaintiff has alleged delay in receiving medical care and has
> expressed dissatisfaction with the speed and effectiveness of his treatment,
> none of his allegations rise to the level of deliberate indifference necessary
> to establish a constitutional violation cognizable under Section 1983.
>
> First, mere delay in receiving care is not in and of itself a constitutional
> violation. *Mendoza*, 989 F.2d at 195; *Wesson v. Oglesby*, 910 F.2d 278,
> 284 (5th Cir.1990); *Simons v. Clemens*, 752 F.2d 1053, 1056 (5th Cir.1985).
> Regardless of the length of delay, plaintiff at a minimum must show
> deliberate indifference to serious medical needs. *Wilson*, 501 U.S. at 298.
> The delay about which plaintiff complains did not cause "a life-long handicap
> or permanent loss" sufficient to constitute a serious medical need for
> constitutional purposes. *See Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40
> F.3d 1176, 1188 (11th Cir.1994) (citing *Monmouth County v. Lanzaro*, 834
> F.2d 326, 347 (3d Cir.1987) ("Where the delay results in an inmate's
> suffering 'a life-long handicap or permanent loss, the medical need is
> serious.' ")); *Wesson*, 910 F.2d at 283-84 (minor delay in escorting injured
> prisoner to prison infirmary for treatment of swollen wrists with some
> bleeding cannot be construed as deliberate indifference to serious medical
> needs). No such permanent loss resulting from delay has been alleged in

---

[66] *Id.* at *13 (citations omitted).

[67] 523 Fed. Appx. 275 (5th Cir. 2013).

[68] *Id.* (citing *Domino v. Tex. Dep't of Crim. Justice, Institutional Div.*, 239 F.3d 752, 756 (5th Cir. 2001); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995) (per curiam).

[69] 2006 WL 2710475 (E.D. La. Sep. 20, 2006).

50192

this case.

Contentions like Calloway's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); *see Randall*, 2005 WL 1772311, at * 1 (allegations that plaintiff with hepatitis C should have been examined sooner and received different treatment reflect mere negligence and disagreement with treatment decisions); *Norton*, 122 F.3d at 291-92; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991); *Mendoza*, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); *Wesson*, 910 F.2d at 284 (provision of medical treatment is inconsistent with inference of deliberate indifference). Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.[70]

Plaintiff herein has not argued or presented any summary judgment evidence to establish that the worsening of his condition from Stage 3 Fibrosis to Stage 4 Cirrhosis constitutes a "life-long handicap or permanent loss." Further, Plaintiff has offered no summary judgment evidence to support any purported claim that his condition is uncurable or irreversible. This record is also void of any evidence that would demonstrate that Defendants possessed a "culpable state of mind." Finally, Plaintiff's allegations regarding Defendants' conduct do not rise beyond negligence, and Plaintiff has failed to offer jurisprudential support for an argument to the contrary.

In *Burling v. Jones*, the district court for the Southern District of Texas addressed a case where an inmate-plaintiff complained that, **despite the worsening of his liver condition due to hepatitis C**, the prison medical staff failed to prescribe him Harvoni

---

[70] *Id.* at *8.
50192

and were, thus deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[71]  The court dismissed this claim as frivolous, finding:

> Burling alleged that he was not provided with the proper medication to treat Hepatitis C. The record showing an extended history of examinations, diagnoses, and medications rebuts Burling's allegations of deliberate indifference. *Mendoza v. Lynaugh*, 989 F.2d 191, 193–95 (5th Cir. 1993). Burling has not alleged facts supporting an inference that the medical care provided to him was so inadequate that the defendants knew of and were deliberately indifferent to a substantial risk to Burling's health. As mentioned above, his own pleadings show that he was regularly examined by medical personnel and prescribed medications. (Docket Entry No. 13, pp. 6–7). Burling admitted that he was seen by medical personnel on numerous occasions and prescribed treatment. He indicates that in 2010, he was prescribed Peginterferon and Ribavirin, which has been known to cause more problems in genotype 3 Hep–C. His pleadings show that medical personnel were regularly monitoring his liver function from April 2015 to August 2016. Medical personnel also performed ultrasounds to evaluate Burling's liver function. Burling complains that medical personnel unjustifiably delayed providing him with a newer treatment for Hepatitis C. "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimizana*, 122 F.3d 286, 292 (5th Cir. 1997). Burling has not alleged facts that, if proven, would support the inference that the defendants were aware of, and disregarded, a substantial risk of harm to Burling.[72]

The district court for the Southern District of Mississippi reached the same result in *Hale v. Abangan*, wherein an inmate-plaintiff suffering from hepatitis C claimed deliberate medical indifference where he claimed he was not given adequate treatment and a cure for his hepatitis C.[73]  Noting that "the medical record shows that his disease has been monitored in the chronic care clinic and that he has had no problems[,]"[74] the court found that, "it appears that the gravamen of Hale's claim is that prison officials have

---

[71] 2017 WL 384364 (S.D. Tex. Jan. 24, 2017)(emphasis added).
[72] *Id.* at *3.
[73] 2018 WL 1053520, *2 (S.D. Miss. Jan. 26, 2018).
[74] *Id.*
50192

wrongly denied him one of the newer drug therapies for the condition."[75]  Following Fifth

Circuit precedent, the Court rejected the plaintiff's claim:  "The state's refusal to provide

Hale with the very best available treatment does not amount to deliberate indifference."[76]

Courts around the country outside of the Fifth Circuit have reached the same

conclusion addressing similar claims.  In *Phelps v. Wexford Health Services, Inc.*, an

inmate-plaintiff brought a constitutional claim against prison defendants for deliberate

medical indifference because the defendants failed to treat his HCV with Harvoni.[77]  The

court granted summary judgment in favor of the defendants, holding:

> To be sure, inmates have a constitutional right to adequate medical
> treatment. But, they do [not] enjoy the right to the treatment of their choice.
> The fact that Phelps is not receiving Harvoni does not reflect deliberate
> indifference by the Medical Defendants. As shown, Harvoni is not the drug
> of choice for the DPSCS. Phelps is regularly monitored for his HCV and his
> test results continue to show an absence of viral load. Further, Phelps has
> not refuted the information in his verified medical records. Phelps's
> disagreement with medical providers over whether he should be treated
> with Harvoni does not rise to the level of a constitutional violation.[78]

The case most analogous to the case before the Court is *Fitch v. Blades*, a case

decided by the Idaho district court. In *Fitch v. Blades*, an inmate-plaintiff asserted an

Eighth Amendment violation against prison defendants for failing to prescribe him the

newly approved drug therapy Harvoni.[79]    The plaintiff claimed that, because of the

defendants' refusal to prescribe him HCV medication, his life "will be shortened, while his

lifestyle deteriorates, and he is allowed to die."[80]  The plaintiff was originally prescribed

---

[75] *Id.*

[76] *Id.* (citing *Davidson v. Texas Dep't of Crim. Justice*, 91 Fed. Appx. 963, 964-65 (5th Cir. 2004) (affirming district court's dismissal of Plaintiff's claim for failure to provide interferon therapy for hepatitis C)).

[77] 2017 WL 528424 (D. Maryland Feb. 8, 2017).

[78] *Id.* at *9.

[79] 2016 WL 8118192 (D. Idaho Oct. 27, 2016).

[80] *Id.* at *1.

50192

the triple drug therapy of PEG-interferon, Ribavirin, and Boceprivir or Telaprevir.  At that time, Plaintiff had stage 3 liver fibrosis, but no cirrhosis.[81]  Much like the current Plaintiff, Fitch's triple drug therapy was stopped due to side-effects, and later lab results showed that his treatment had failed.[82]  Although he was in Stage 3 Fibrosis, Fitch was remained in the chronic care clinic where his HCV was determined to be "in fair control and stable," and he was monitored with lab work and follow-ups approximately every three months.[83]

In December 2014, medical staff met with Fitch regarding new HCV treatment options, and Fitch was advised that the defendants were prioritizing who should receive treatment first.[84]  Fitch was advised that a history of failed treatment was a risk factor for new treatment to fail as well, making new treatment less feasible, and he was also advised that his condition would be monitored through regular Chronic Care visits and lab work.[85]  Although Fitch was considered a candidate for the new drug Harvoni, "the sickest inmates receive treatment first."[86]  Ultimately, Fitch's doctor did not believe him to be a good candidate for Harvoni because his "poor compliance with medication, multiple drug offenses, and his psychiatric diagnoses indicated that he would not likely complete the twelve week course of Harvoni successfully."[87]  The court rejected Fitch's claim of deliberate medical indifference, finding as follows:

> In contrast to Plaintiff's claim that he has not received any care, the facts indicate Plaintiff began in 2013 on a drug therapy, which was initially promising. Once Plaintiff's viral load increased, Plaintiff's condition was managed through the Chronic Care clinic, and he received lab work and an

---

[81] *Id.*
[82] *Id.* at *2.
[83] *Id.*
[84] *Id.* at *3.
[85] *Id.*
[86] *Id.*
[87] *Id.* at *4.

50192

evaluation on a regular basis. The records indicate lab work and evaluations were ordered approximately every three months.

When Harvoni, a newly approved drug therapy, became approved, the record indicates Dr. Young evaluated Plaintiff for such treatment, and in the exercise of his medical judgment, determined Plaintiff was not currently a candidate for such treatment. Dr. Young based his decision upon the fact that Plaintiff's condition at the time was stable. Dr. Young considered also Plaintiff's specific medical condition, drug history, disciplinary history, treatment history, and psychological history when prioritizing his treatment for Harvoni.

Plaintiff does not state a claim for deliberate indifference on these facts, which simply indicate a difference in medical judgment as to the type of treatment Plaintiff should receive. Instead, the medical records indicate Dr. Young made a deliberate, careful judgment about the course of Plaintiff's treatment based upon the severity of Plaintiff's disease, mental health issues, and likelihood of compliance.[88]

In *King v. Calderwood*, an inmate-plaintiff suffering from HCV claimed deliberate medical indifference on the part of the prison defendants, and the court granted summary judgment in favor of the defendants.[89]  The plaintiff argued that "he should be provided with a drug called 'Harvoni' which [he] insists is a 'cure' for Hepatitis-C."[90]  Nevertheless, the plaintiff's prison doctor concluded that the plaintiff did not require drug intervention at that time.[91]  The court concluded:

As such, Plaintiff's contentions constitute a disagreement regarding the appropriate course of treatment. It is well established that "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that a difference of opinion amounted to deliberate indifference, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the plaintiff's] health." *Jackson v. McIntosh*, 90 F.3d

---

[88] *Id.* at *7.
[89] 2016 WL 4771065 (D. Nevada Sep. 12, 2016).
[90] *Id.* at *5.
[91] *Id.*
50192

330, 332 (9th Cir. 1996). Plaintiff has not provided any evidence to support such a finding.[92]

Plaintiff attempts to distinguish every case cited by Defendants in this matter; however, Plaintiff fails to cite a single case involving a similar fact pattern that supports his position. As set forth above, the Court has discussed several cases across the country wherein every court has held that failing to provide an HCV inmate with Harvoni (or another DAA drug) upon his immediate request does not constitute deliberate medical indifference. Considering the foregoing jurisprudence, and the undisputed facts of this case, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment deliberate medical indifference claim.

## C. Supervisory Liability for Deliberate Indifference

In the Fifth Circuit, "to support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor.[93] A supervisory official is liable if he or she demonstrates deliberate indifference to a plaintiff's constitutionally protected rights."[94] Deliberate indifference "is 'more blameworthy than negligence' but less blameworthy than purposeful harm.[95] The standard is 'stringent' and requires that the supervisory actor disregarded a known consequence of his action."[96] Moreover, "'[u]nintentionally negligent oversight' does not satisfy the deliberate indifference standard."[97]

The Fifth Circuit has also held that "'doctors may not be held liable for § 1983

---

[92] *Id.*

[93] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010)(citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)).

[94] *Id.* (citing *Doe*, 15 F.3d at 454).

[95] *Id.*, quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

[96] *Id.*, quoting *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir.1997).

[97] *Id.* at 170, quoting *Gonzales v. Ysleta Indep. Sch. Dist.,* 996 F.2d 745, 756 (5th Cir. 1993).

50192

violations under a theory of respondent superior or vicarious liability, based upon claimed omissions by the nurses.'[98]   A supervisor can, however, be held liable when he was himself deliberately indifferent."[99]  To hold a defendant supervisor liable on such a theory, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[100]

"Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional violations."[101]  Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action."[102]

Because the Court has found that Plaintiff suffered no constitutional deprivation, the Court need not consider supervisory liability or any purported policy challenge.[103]  The Supervisor-Defendants are entitled to summary judgment on this claim.

### D.  Qualified Immunity

Because the Court has found that Plaintiff suffered no constitutional deprivation,

---

[98] *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015)(quoting *Stewart v. Murphy,* 174 F.3d 530, 536 (5th Cir.1999)).
[99] *Id.*
[100] *Id.*, quoting *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir.1998) (internal quotation marks omitted).
[101] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).
[102] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).
[103] *See Anderson v. Dallas County Texas*, 286 Fed. Appx. 850, 860 (5th Cir. 2008)(citing *City of L.A. v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *see also Trevino v. Ellis County, Texas*, 710 Fed. Appx. 199, 200 (5th Cir. 2018)(Plaintiff failed to demonstrate deliberate medical indifference; court held "Ellis County may not be held liable through the actions of Brown because Brown himself is not liable under § 1983.").
50192

the Court need not consider the individual Defendants' assertion of the defense of qualified immunity.  However, the Court finds, in the alternative, that the Defendants sued in their individual capacities would be entitled to qualified immunity if Plaintiff could demonstrate a constitutional deprivation.

Qualified immunity is available when a § 1983 suit is brought against a state official in his or her individual capacity, making him or her personally liable for any damages awarded to a plaintiff.[104]  The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation.[105]  A court may rely on either prong of the defense in its analysis.[106]  If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action."[107]  To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.[108]  This inquiry regarding whether a defendant's actions were objectively reasonable has been described as "a fact-intensive inquiry."[109]

Considering the testimony of Dr. Raman Singh, it is clear that the medical staff at Elayn Hunt were assessing how to implement the new DAA drug protocols for HCV

---

[104] 42 U.S.C. § 1983.
[105] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).
[106] *Id.*
[107] *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citations omitted).
[108] *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008).
[109] *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016)(quoting *Galvan v. City of San Antonio*, 435 Fed.Appx. 309, 310–11 (5th Cir. 2010)).
50192

inmates after the drugs were approved by the FDA.  Plaintiff attempts to cast doubt on Dr. Singh's credibility, arguing that he testified that drug costs were "one of the main considerations" in obtaining the new medications, yet he also testified that "money was no hindrance to obtaining the drugs."[110]   The Court finds that this statement mischaracterizes Dr. Singh's testimony.  Dr. Singh actually testified that the costs of the new drugs "was one of many concerns," with other concerns relating to lacking information based on the newness of the drugs and patient selection criteria.[111]  There is no summary judgment evidence that Dr. Singh elevated cost considerations over the many other considerations he discussed regarding the procurement of these new drugs.

Both Britton and Dr. Singh testified regarding the process within the DOC of determining how to implement the new drug protocols for the approximately 5,000 HCV-infected inmates and the need to prioritize treatment for the inmates suffering from the most progressed stages of the disease. This testimony is uncontroverted, and Plaintiff did not offer the Court any jurisprudence or statutory authority to suggest these considerations are not objectively reasonable in the prison context.

Indeed, the *Fitch v. Blades* case discussed above indicates that a prison's medical staff implementing this type of protocol to determine priority of treatment is constitutionally sound.[112]  In *Fitch*, the court recounted the prison's method for addressing the new HCV drug protocols, which is similar to the method explained by Dr. Singh:

> A new drug therapy, Harvoni, has been approved by the FDA. Young Aff. ¶ 11. (Dkt. 29-4 at 6.) Although Plaintiff is a candidate for Harvoni, the sickest inmates receive treatment first. The IDOC provides Corizon, LLC, a set fund to treat HCV inmates each year and a complete course of Harvoni for each

---

[110] Rec. Doc. No. 135 at 6.
[111] *Id.* at 24 (Deposition of Dr. Raman Singh, p. 23, line 6).
[112] *Fitch*, 2016 WL 8118192 at *3-*4.
50192

patient is approximately $96,000.00. Therefore, Dr. Young prioritizes the patients who may receive Harvoni using the Federal Bureau of Prisons Clinical Practice Guidelines, Evaluation and Management of Chronic Hepatitis C Virus (HCV) Infection ("Guidelines").

In Dr. Young's opinion, the Guidelines reflect the balancing of limited resources and the need for medical treatment by prioritizing the greatest medical need and the highest likelihood of success for each given patient. (*Id.*) Stable HCV patients may receive lower priority as they are not at an immediate risk of HCV related complications, and current advancements in HCV treatment, which have been tremendous over the last five years, may provide better and more cost efficient treatment options. (*Id.*)

According to Dr. Young, prioritization is based on multiple factors. Young Aff. ¶ 12. (Dkt. 29-4 at 6-7.) First is the status of the HCV infection. Those at a higher metavir stage are prioritized over those patients at a lower stage. Many patients remain stable for years with HCV and can be managed medically. These patients are at a lower priority than patients who have developed cirrhosis or associated comorbidities such as hepatocellular carcinoma or chronic kidney disease. Other health factors include whether the patient is on a medication that is contraindicated with the HCV treatment or whether the patient is too sick from other conditions to tolerate treatment. These are only a few examples of the many variables that Dr. Young considers when prioritizing a patient for treatment. Providers are expected to exercise their medical judgment to determine whether a patient is appropriate for HCV treatment. *Id.*

Next, Dr. Young explains that providers also consider whether a patient "demonstrate[s] a willingness and an ability to adhere to a rigorous treatment regimen and to abstain from high-risk activities." Young Aff. ¶ 13. (Dkt. 19-4 at 7, citing Ex. B, Guidelines, p. 11). Patients need to successfully complete treatment. As an example, the inmate must be incarcerated within IDOC long enough to receive a full course because the interruption caused by release substantially reduces the likelihood of success. In addition, inmates are evaluated for their propensity to engage in risky behavior while incarcerated, because such behaviors can result in re-infection with HCV. HCV prevalence is higher in the correctional setting. The providers are expected to exercise their medical judgment to determine whether a patient will successfully complete therapy. Young Aff. ¶¶ 11, 13. (Dkt. 19-4 at 6-7.).[113]

Notably, the *Fitch* court did not find the prison's consideration of the costs of procurement

---

[113] *Id.*

50192

to be an improper motive, and the court ultimately found no constitutional deprivation as a result of Fitch being subjected to this assessment and treatment prioritization method.

Plaintiff also complains that Defendant Britton prescribed Harvoni to non-inmate Medicaid patients in 2015;[114] however, this is irrelevant to the issue before the Court in this case. Non-inmate Medicaid patients are not similarly situated to inmate-patients for purposes of analyzing whether a constitutional violation has occurred. As the Fifth Circuit and district courts within this circuit have repeatedly held:

> [I]t is important to first remember that a prisoner's constitutional right to medical care is extremely limited. For example, if an inmate in fact receives medical treatment, federal constitutional protections are not violated simply because that treatment is unsuccessful or because pain persists despite the treatment.[115] Further, the federal constitution certainly does not require that inmates receive optimal care. The fact that an inmate's medical treatment "may not have been the best money could buy" is insufficient to establish a federal violation.[116]

Accordingly, Plaintiff has failed to demonstrate genuine issues of fact that would preclude the application of the qualified immunity defense for the individual Defendants in this matter as there is no summary judgment evidence suggesting that Defendants' actions were not objectively reasonable under the timing and circumstances surrounding the availability of new HCV drug options. Both Nurse Britton and Dr. Singh testified that the new DAA drugs were not available to the prison until 2016.[117] Thus, had Plaintiff demonstrated a constitutional deprivation, Defendants would be entitled to qualified

---

[114] Rec. Doc. No. 135-4 at 58-59 (Deposition of Elizabeth Britton, pp. 57-58).

[115] *Spriggens v. LaRavia*, 2012 WL 1135845 at *2 (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Williams v. Chief of Medical Operations, Tarrant County Jail*, No. 94–10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); *Kron v. Tanner*, Civ. Action No. 10–518, 2010 WL 3199854, at *7 (E.D.La. May 19, 2010), adopted, 2010 WL 3171040 (E.D.La. Aug. 6, 2010)).

[116] *Id.* (quoting *Mayweather v. Foti*, 958 F.2d 91 (5th Cir.1992); *see also Gobert*, 463 F.3d at 349; *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir.1978)).

[117] Rec. Doc. No. 130-15 at 34 (Deposition of Elizabeth Britton at 33); Rec. Doc. No. 130-14 at 14 (Deposition of Dr. Raman Singh at 13).

50192

immunity.

## III.     CONCLUSION

For the reasons set forth above, Defendants' *Motion for Summary Judgment*[118] is

GRANTED.  Plaintiff's case is dismissed with prejudice.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>February 22, 2019</u>.


**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[118] Rec. Doc. No. 130.
50192